01

02

03

04

05                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
06                              AT SEATTLE

07  KUAN-MING HUANG,                    )    CASE NO.: C06-1281-MJP
                                        )
08          Petitioner,                 )
                                        )
09          v.                          )    REPORT AND RECOMMENDATION
                                        )
10  KING COUNTY DISTRICT COURT,         )
                                        )
11          Respondent.                 )
    _____ )
12

13                            INTRODUCTION

14          Petitioner Kuan-Ming Huang proceeds with counsel in this 28 U.S.C. § 2254 action

15  challenging his November 12, 2004 conviction for driving under the influence (DUI). (Dkts. 1 &

16  4.) Respondent submitted an answer, arguing that petitioner's § 2254 petition should be dismissed

17  with prejudice. (Dkt. 9.)  Petitioner submitted a response to that answer. (Dkt. 11.)  Having

18  reviewed the record in its entirety, including the state court record, the Court recommends that

19  the petition be dismissed with prejudice.

20                            BACKGROUND

21          In June 2004, the City of Bellevue Police Department stopped and arrested petitioner on

22  suspicion of DUI.  Petitioner declined to submit to a breath alcohol concentration (BAC) test and

REPORT AND RECOMMENDATION
PAGE -1

01  refused to sign an Implied Consent Warning for Breath form.  (Dkt. 1, Attach. A.)  That form

02  advised petitioner of his right to refuse the BAC test and the consequences of refusal, including

03  the revocation of his driver's license for at least one year and the fact that his refusal to submit to

04  the BAC test "may be used in a criminal trial."  (*Id*. (case altered)).

05       For a person convicted of DUI for the first time, RCW 46.61.5055 provides for a

06  mandatory minimum term of imprisonment of no less than two days in jail for an individual who

07  refused to take the BAC test, and of no less than one day in jail for an individual who took the

08  BAC test.  Prior to trial, petitioner moved to suppress his refusal to take the BAC test, arguing

09  that:  (1) the implied consent warnings are inaccurate and misleading in informing a driver of the

10  right to refuse a BAC test, but failing to inform as to the mandatory criminal penalties for

11  exercising that right; and (2) the enhanced penalty imposed as a result of the exercise of the

12  implied consent right violates due process.  ( *Id*., Attach. D.)  The King County District Court

13  rejected petitioner's arguments in a panel decision.  (*Id*.)

14       The King County District Court convicted petitioner of DUI in violation of RCW

15  46.61.502 and sentenced him to two days in jail.  (*Id*., Attach. E.)  It appears that petitioner has

16  not yet served his sentence.

17       Raising the same arguments described above, petitioner appealed the King County District

18  Court's panel decision denying his motion to suppress.  (Dkt. 9, Ex. A.) The Superior Court of

19  Washington affirmed.  (Dkt. 1, Attach. F.)  Subsequently, both the Washington Court of Appeals

20  and the Washington Supreme Court denied petitioner's request for discretionary review.  ( *Id*.,

21  Attachs. G & H.)

22  / / /

REPORT AND RECOMMENDATION
PAGE -2

01

<u>DISCUSSION</u>

02       Petitioner here raises two grounds for relief:

03   [(1)]   . . . Washington maintains the most fundamentally unfair Implied Consent
             Warnings.  Washington is the only state in the nation that informs DUI
04           suspects, via their Implied Consent Warnings, that they have the "right" to
             refuse the Breath Alcohol Concentration test while failing to inform them they
05           face mandatory jail and criminal enhancements for exercising that "right."
             This is a significant Due Process Violation.

06

07   [(2)]   Unconstitutional Sentencing Enhancement. . . .  Washington state grants all
             DUI suspects (who have not produced significant injury or death) the
08           statutory right to refuse the breath alcohol concentration test.  This statutory
             right has existed since 1969 and is found in the state's Implied Consent
09           Statute: RCW 46.20.308.  In 1994, Washington amended its DUI criminal
             punishment scheme and added additional jail and other criminal punishments
10           for the act of refusing.  This scheme is found in RCW 46.61.5055.
             Washington did not remove the statutory right to refuse however.  To this day
11           Washington maintains that right and continues to inform suspects accordingly.
             Washington appears to be the only state in the nation with this scheme.
12           Washington also appears to be the only state in the nation criminally punishing
             its citizens for the mere exercise of the very statutory right they have granted.

13   (Dkt. 1 at 5, 7-8.)

14       Respondent concedes that petitioner appears to have exhausted his administrative

15   remedies.  However, respondent raises a number of arguments for dismissal of this petition on the

16   merits.  For the reasons described below, the Court agrees with respondent that this habeas

17   petition should be denied and this action dismissed with prejudice.

18       This Court's review of the merits of petitioner's claims is governed by 28 U.S.C. §

19   2254(d)(1).  Under that standard, the Court cannot grant a writ of habeas corpus unless a

20   petitioner demonstrates that he is in custody in violation of federal law and that the highest state

21   court decision rejecting his grounds was either "contrary to, or involved an unreasonable

22   application of, clearly established Federal law, as determined by the Supreme Court of the United

REPORT AND RECOMMENDATION
PAGE -3

01   States." 28 U.S.C. § 2254(a) and (d)(1).  The Supreme Court holdings at the time of the state

02   court decision will provide the "definitive source of clearly established federal law[.]"  *Van Tran*

03   *v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer*

04   *v. Andrade*, 538 U.S. 63 (2003).  *See also  Carey v. Musladin*, ___ U.S. ___, 127 S.Ct. 649, 653

05   (2006) ("[F]ederal habeas relief may be granted here if the [state court's] decision was contrary

06   to or involved an unreasonable application of this Court's applicable holdings.")  A state court

07   decision is contrary to clearly established precedent if it "'applies a rule that contradicts the

08   governing law set forth in'" a Supreme Court decision, or "'confronts a set of facts that are

09   materially indistinguishable'" from such a decision and nevertheless arrives at a different result.

10   *Early v. Packer* , 537 U.S. 3, 8 (2002) (quoting    *Williams v. Taylor*, 529 U.S. 362, 405-406

11   (2000)).

12          In this case, in considering petitioner's due process challenge prior to trial, the King

13   County District Court ruled as follows:

14          Defendants' second challenge comes from language contained in <u>North
       Carolina v. Pearce</u> , 395 U.S. 711, 89 S.Ct. 663, 23 L.Ed.2d 656 (1969) and
15     <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978),
       asserting that both cases stand for the proposition that the State cannot punish a
16     person for exercising a statutory or constitutional right.

17          <u>North Carolina v. Pearce</u> involved a due process challenge of prosecutorial
       vindictiveness against a defendant for having successfully attacked his first conviction
18     – the Court holding that the successful exercise of a right of appeal should play no
       part in the sentence he receives after a new trial and that due process would be
19     violated by imposition of a heavier sentence to punish the defendant for getting his
       original conviction set aside.    <u>Bordenkircher v. Hayes</u> involved a due process
20     challenge arising out of plea negotiations in which the prosecutor carried out his/her
       threat to reindict the defendant on more serious charges when the defendant refused
21     to plead guilty to the offenses with which he was originally charged – the Court
       holding that due process was not violated by such process.

22

REPORT AND RECOMMENDATION
PAGE -4

State v. Soderholm, 68 Wn.App. 363 (1993), addressed the issue of prosecutorial vindictiveness, which it defined as the "intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a procedural right." Id. at 371 (citing State v. Bockman, 37 Wash.App. 474, 488 (1981)). Soderholm then picks up the quote from Bordenkircher that "to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance of his legal rights is "patently unconstitutional." Id., 434 U.S. at 363, 98 S.Ct. at 668. In Bordenkircher, the United States Supreme Court held that in the give-and-take of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. Soderholm ruled similarly – prosecutor did not engage in vindictive conduct by dismissing an attempted forgery case in district court and filing forgery case in superior court after the defendant declined to plead guilty to an attempted forgery charge. So long as the Defendant is free to make a choice, there is no due process violation.

The fact that a person has a statutory right to refuse to take the breath test does not mean that criminal consequences cannot flow from exercising that "right." The State can constitutionally force a defendant to submit to a blood alcohol or breathalyzer test. Washington gives a driver a right to refuse pursuant to RCW 46.20.308. The choice is not constitutional, but a "matter of legislative grace." Id., at 587; State v. Zwicker, 105 Wash.2d 228 (1986). Given that the State could require a person to take the test, the State can also offer the person the opportunity to refuse the test, with incidental penalties. City of Seattle v. Stalsbroten, 138 Wash.2d 227 (1999). "Attaching penalties to the exercise of a statutory right of refusal is not inherently coercive where the Legislature could withdraw this privilege altogether." Zwicker, 105 Wash.2d at 242. Contrary to Defendants argument, according to Zwicker, a penalty that results from the exercise of a statutory right is not improper, and not a violation of due process.

Using the Bordenkircher analogy, if the Defendant is free to accept or reject the prosecution's offer, there is no due process violation. Here, the Defendants are free to accept or reject the "offer" – they just get the attendant consequences based on their choice. Accordingly, given the pronouncements of Bostrom, Zwicker, and Bordenkircher, Defendants' constitutional challenge under the due process clause must likewise be denied.

Separately, with regard to Defendants second argument – that enhanced penalties themselves constitute a due process violation by punishing a driver for the exercise of a "right" of refusal – the Court must point out that there is no legal or logical distinction between the enhanced penalties that are a part of criminal sentencing and the increased durations of license suspension which likewise result

REPORT AND RECOMMENDATION
PAGE -5

01       from the act of refusal.  The latter have clearly been upheld by the Supreme Court in
Bostrom, supra.

03            Separately, the Court must point out two additional factors supporting its
conclusion that there is no due process violation. (1).  The actual admission of refusal
evidence is not an absolute – the trial court must determine that all of the preliminary
evidentiary requirements have been met in order for such evidence to be admissible.
(2).  Under  Apprendi v. New Jersey, 147 L.Ed.2d 435 (2000) and Blakely v.
Washington, 124 S.Ct. 2531 (2004), any factor that enhances a criminal penalty must
be determined by the trier of fact – the jury or judge.  Neither determination is a
foregone conclusion.

07            Statutes are presumed constitutional – challenges to the constitutionality of
any statute require the proponent of any challenge to prove its unconstitutionality
beyond a reasonable doubt.  Island County v. State of Washington, 135 Wash.2d 141,
146 (1998).  In this case, Defendants have failed to carry their burden of proof.  This
panel is satisfied that the underlying statute is constitutional – defendants have failed
to establish its unconstitutionality beyond a reasonable doubt.

11   (Dkt. 1, Attach. D.)  The Superior Court of Washington found this decision "well reasoned and

12   well thought out[,]" and affirmed without further discussion.  (Id., Attach. F.)

13      On Appeal, the Washington Court of Appeals stated:

14            Huang renews the arguments he made below, arguing that due process is
violated when a driver is told as part of implied consent warnings that he has the right
to refuse a breath test, but he is not informed that the sentence in any criminal
proceedings will be enhanced for refusing to take the breath test.  He contends, in
other words, that it is a violation of due process to punish the exercise of a statutory
right and that the implied consent warnings do not give a driver the opportunity to
make an informed, i.e., knowing and intelligent decision whether to take the breath
test.  He contends that this is a decade-old error that raises a significant question of
constitutional law and an issue of public interest that should be decided by an
appellate court.  RAP 2.3(d)(2), (3).

20            For the same reasons set forth in my earlier ruling, I disagree.  It is well
established that the right to refuse a breath test is not a constitutional right, but is a
matter of legislative grace.  State v. Zwicker, 105 Wn.2d 228, 242, 713 P.2d 1101
(1986).  As the court stated in  Zwicker, attaching penalties to the exercise of a
statutory right of refusal is not inherently coercive where the Legislature could
withdraw the privilege altogether.  Zwicker, 105 Wn.2d at 242.  The court in State

REPORT AND RECOMMENDATION
PAGE -6

01      v. Bostrom, 127 Wn.2d 580, 902 P.2d 157 (1995) stated:

02              We first address the argument of those Respondents who
         refused the
03      test.  They claim that they were deprived of the opportunity to make
         a knowing and intelligent decision because they were not warned that
04      if they refused the test, they risked enhanced penalties should they be
         convicted of DWI.   RCW 41.61.5051(2)(b) and RCW
05      46.61.5052(2)(b).  This argument is wholly without merit.  Included
         in the statutory warnings read to these Respondents was the
06      admonition that "refusal to take the test may be used in a criminal
         trial."  RCW 46.20.308(2).  *This information was sufficient to alert
07      respondents to the possibility that their refusal could be used at any
         phase of a criminal trial, including sentencing.*   There is no
08      requirement that each and every specific consequence of refusal be
         enunciated.  We therefore reject the Respondents' contention that the
09      warnings given them were inadequate.

10      (emphasis added).  Bostrom, 127 Wn.2d at 586 (citations omitted).  The Bostrom
         court also rejected the drivers' due process argument.  The court reasoned, "The
11      warnings offered no implicit assurances which could mislead either [drivers] who
         refused the test or those who took the test.  The warnings informed drivers that their
12      refusal could be used in a criminal trial and, thus, explicitly left open the possibility
         that refusal may impact sentencing decisions."  Bostrom, 127 Wn.2d at 591.  Even if
13      Huang is correct that his specific arguments were neither raised nor addressed in prior
         cases, in view of the language in Bostrom and Zwicker, Huang has raised neither a
14      significant question of constitutional law nor an issue of public interest that warrants
         review by an appellate court.   To the extent Huang's arguments challenge the
15      reasoning of Bostrom, he must direct them to the Supreme Court.

16      (*Id.*, Attach. G.)  Thereafter, the Washington Supreme Court held:

17              [Mr. Huang] urges that, even though the implied consent warnings advise that
         exercise of that right can carry administrative and criminal consequences, the warnings
18      are misleading.  And he also argues more broadly that the State simply cannot impose
         a criminal penalty for the exercise of a statutory right.

19
20              As to the first of these contentions – that the implied consent warnings are
         misleading – this court has already rejected an essentially identical challenge.  *State
21      v. Bostrom*, 127 Wn.2d 580, 586, 902 P.2d 157 (1995); *see also State v. Zwicker*, 105
         Wn.2d 228, 713 P.2d 1101 (1986).  As to the second contention, I conclude that it
22      was correctly rejected by the district and superior courts (the former by a three-judge
         panel and the latter by two judges independently), and that the Court of Appeals

REPORT AND RECOMMENDATION
PAGE -7

01      therefore did not err in denying further review.  Mr. Huang may be correct that his argument was not made in quite the same way in earlier cases such as *Bostrom* and

02      *Zwicker*.  But the precedent he cites, such as *South Dakota v. Neville*, 459 U.S. 553, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983), tends to refute rather than support his claim.

03      And I do not believe that the implied consent statutes can be fairly considered as raising the kind of due process problem addressed in *North Carolina v. Pearce*, 395

04      U.S. 711, 89 S. Ct. 2072, 23 L.Ed. 656 (1969).

05 (*Id.*, Attach. H.)

06      Petitioner's habeas petition contains almost no substantive argument and makes no

07 reference to federal law.  In his reply, petitioner does point to United States Supreme Court

08 precedent, including *North Carolina v. Pearce*, 395 U.S. 711 (1969), *Doyle v. Ohio*, 426 U.S. 610

09 (1976), *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), and *South Dakota v. Neville*, 459 U.S. 553

10 (1983).  However, none of these cases support a grant of habeas relief to petitioner.

11      Petitioner fails to establish that the state court decisions in this case were in any respect

12 contrary to, or involved an unreasonable application of, the holdings in either      *Pearce* or

13 *Bordenkircher.  See Pearce*, 395 U.S. at 725-26 (holding that "[d]ue process of law . . . requires

14 that vindictiveness against a defendant for having successfully attacked his first conviction must

15 play no part in the sentence he receives after a new trial[,]" and that "[i]n order to assure the

16 absence of such a [retaliatory] motivation, . . . whenever a judge imposes a more severe sentence

17 upon a defendant after a new trial, the reasons for his doing so must affirmatively appear."),

18 *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989); *Bordenkircher*,

19 434 U.S. at 363-65 (explaining that, while  "[t]o punish a person because he has done what the

20 law plainly allows him to do is a due process violation of the most basic sort, . . .in the 'give-and-

21 take' of plea bargaining, there is no such element of punishment or retaliation so long as the

22 accused is free to accept or reject the prosecution's offer."; concluding that the Due Process

REPORT AND RECOMMENDATION
PAGE -8

01 Clause was not violated where a prosecutor carried out a threat made during plea negotiations to

02 reindict the accused on more serious charges if he did not plead guilty to the original charge).

03 Instead, as found by the Washington Supreme Court with respect to *Pearce*, the implied consent

04 statute challenged here cannot be fairly considered as raising the kind of due process problems

05 addressed in these cases.[1]

06      Nor does *Neville*, although a more analogous case, or the *Doyle* decision as discussed in

07 *Neville*, assist petitioner in his request for habeas relief.  In *Neville*, the Supreme Court examined

08 South Dakota's implied consent law, which allowed a drunk driving suspect to refuse to take a

09 blood-alcohol test, but called for revocation of the suspect's drivers license and allowed for the

10 refusal to take the test to be used against the suspect at trial.  459 U.S. at 559-60.  In considering

11 a due process challenge to the statute, the Supreme Court held as follows:

12      Relying on *Doyle v. Ohio*, 426 U.S. 610 (1976), respondent also suggests that
       admission at trial of his refusal violates the Due Process Clause because respondent
13     was not fully warned of the consequences of refusal.  *Doyle* held that the Due Process
       Clause prohibits a prosecutor from using a defendant's silence after    *Miranda*
14     warnings to impeach his testimony at trial.  Just a term before, in    *United States v.
       Hale*, 422 U.S. 171 (1975), we had determined under our supervisory power that the

15

---

16      [1] Petitioner's reply also contains citation to two other Supreme Court decisions, as quoted
       and/or cited within other case law.  *See United States v. Goodwin*, 457 U.S. 368, 372-85 (1982)
17     (cited as supporting the assertion that constitutional due process principles prohibit prosecutorial
       vindictiveness); *United States v. Jackson,* 390 U.S. 570, 581 (1968) (partial quotation of the
18     following:  "If the provision had no other purpose or effect than to chill the assertion of
       constitutional rights by penalizing those who choose to exercise them, then it would be patently
19     unconstitutional.")  However, these citations merely support general principles addressed within
       the Supreme Court precedent discussed within this Report and Recommendation and do not
20     otherwise serve as a basis for granting habeas relief in this case.  *See Goodwin*, 457 U.S. at 380-84
       (not finding a presumption of prosecutorial vindictiveness warranted in a case where, after a
21     defendant refused to plead guilty to lesser charges prior to trial, he was subsequently indicted on
       more serious charges); *Jackson*, 390 U.S. at 581-84 (finding death penalty provision of Federal
22     Kidnaping Act imposed an impermissible burden on the exercise of a constitutional right).

REPORT AND RECOMMENDATION
PAGE -9

01  federal courts could not use such silence for impeachment because of its dubious
    probative value.  Although *Doyle* mentioned this rationale in applying the rule to the
02  States, 426 U.S., at 617, the Court relied on the fundamental unfairness of implicitly
    assuring a suspect that his silence will not be used against him and then using his
03  silence to impeach an explanation subsequently offered at trial.  *Id.*, at 618.

04          Unlike the situation in *Doyle*, we do not think it fundamentally unfair for South
    Dakota to use the refusal to take the test as evidence of guilt, even though
05  respondent was not specifically warned this his refusal could be used against him at
    trial.  First, the right to silence underlying the        *Miranda*  warnings is one of
06  constitutional dimension, and thus cannot be unduly burdened.  *See Miranda*, *supra*,
    at 468, n.37.  *Cf. Fletcher v. Weir*, 455 U.S. 603 (1982) (postarrest silence without
07  *Miranda* warnings may be sued to impeach trial testimony).  Respondent's right to
    refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the
08  South Dakota Legislature.

09          Moreover, the *Miranda* warnings emphasize the dangers of choosing to speak
    ("whatever you say can and will be used as evidence against you in court"), but give
10  no warning of adverse consequences from choosing to remain silent.  This imbalance
    in the delivery of *Miranda* warnings, we recognized in *Doyle*, implicitly assures the
11  suspect that his silence will not be used against him.  The warnings challenged here,
    by contrast, contained no such misleading implicit assurances as to the relative
12  consequences of his choice.  The officers explained that, if respondent chose to submit
    to the test, he had the right to know the results and could choose to take an additional
13  test by a person chosen by him.  The officers did not specifically warn respondent that
    the test results could be used against him at trial.  Explaining the consequences of the
14  other option, the officers specifically warned respondent that failure to take the test
    could lead to loss of driving privileges for one year.  It is true the officers did not
15  inform respondent of the further consequence that evidence of refusal could be used
    against him in court, but we think it unrealistic to say that the warnings given here
16  implicitly assure a suspect that no consequences other than those mentioned will
    occur.  Importantly, the warning that he could lose his driver's license made it clear
17  that refusing the test was not a "safe harbor," free of adverse consequences.

18          While the State did not actually warn respondent that the test results could be
    used against him, we hold that such a failure to warn was not the sort of implicit
19  promise to forgo use of evidence that would unfairly "trick" respondent if the
    evidence were later offered against him at trial.  We therefore conclude that the use
20  of evidence of refusal after these warnings comported with the fundamental fairness
    required by due process.

21

22  *Id.* at 565-66 (footnotes omitted).

REPORT AND RECOMMENDATION
PAGE -10

01        Petitioner asserts that Washington's implied consent statute fundamentally differs from

02   the statutory scheme at issue in *Neville*, noting that South Dakota did not provide additional

03   criminal penalties for exercising the right of refusal.  Petitioner maintains that the implied consent

04   warning in Washington is more attuned to the scenario in *Doyle* in that, in advising a suspect of

05   his "right" to refuse, the warning explicitly assures a suspect that refusal to take a BAC test will

06   not be used to enhance criminal penalties.

07        Petitioner fails to establish that the inclusion of a sentencing ramification in Washington's

08   implied consent statute significantly distinguishes this case from *Neville*.  As noted by the Supreme

09   Court in *Neville,* as well as by the state courts in this case, petitioner's right of refusal, unlike the

10   right at issue in *Doyle*, is not "one of constitutional dimension."  *Id*. at 565.  Nor can it be said that

11   Washington's implied consent warnings contain either explicit or implicit misleading assurances

12   as to the consequences of a refusal to take a BAC test.  The Implied Consent Warning for Breath

13   form clearly informed petitioner that refusal would result in the loss of his license for at least one

14   year and that his refusal "may be used in a criminal trial."  (Dkt. 1, Ex. A.)  Unlike the respondent

15   in *Neville*, petitioner received this latter warning.  Here, as in *Neville*, the warnings given "made

16   it clear that refusing the test was not a 'safe harbor,' free of adverse consequences."  459 U.S. at

17   566.

18        In sum, petitioner fails to demonstrate that he is in custody in violation of federal law and

19   that the highest state court decision rejecting his grounds for relief was either "contrary to, or

20   involved an unreasonable application of, clearly established Federal law, as determined by the

21   Supreme Court of the United States."  28 U.S.C. § 2254(a) and (d)(1).  As such, this habeas

22   petition should be denied.

REPORT AND RECOMMENDATION
PAGE -11

01

<u>CONCLUSION</u>

02    For the reasons described above, petitioner's habeas petition should be denied and this

03 action dismissed with prejudice.  No evidentiary hearing is required as the record conclusively

04 shows that petitioner is not entitled to relief.  A proposed order accompanies this Report and

05 Recommendation.

06    DATED this <u>6th</u> day of February, 2006.

07

08    _____
      Mary Alice Theiler
      United States Magistrate Judge

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -12